## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

MICHAEL GOSHAY,

      Petitioner,

v.                               Case No. 4:22-cv-54-MW-MJF

RICKY D. DIXON,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Michael Goshay has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, with a supporting memorandum. Docs. 1, 2. Respondent ("the State") moves to dismiss the petition as time-barred. Doc. 11. Goshay opposes the motion. Doc. 13. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Goshay's petition should be dismissed as time-barred.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. BACKGROUND AND PROCEDURAL HISTORY

On November 9, 2010, Goshay was charged in Santa Rosa County Circuit Court Case No. 2010-CF-1336, with one count of Aggravated Child Abuse (Count 1), two counts of Domestic Battery by Strangulation (Counts 2-3), one count of Child Abuse Without Causing Great Bodily Harm, Permanent Disability, or Permanent Disfigurement (Count 4), and Resisting an Officer Without Violence (Count 5). Doc. 11, Ex. A.[2] In total, the charges carried a maximum possible sentence of 46 years of imprisonment. Exs. B, C.

Goshay resolved the charges by entering a counseled, negotiated plea agreement. Ex. B. The agreement provided that Goshay would enter an open plea of *nolo contendere* to each offense as charged, and that he would be sentenced to a total term of 20 years of imprisonment. Exs. B, C. Concerning a factual basis, the plea form stated:

> **FACTUAL BASIS**:  The **arrest report** or **offense report** or **probable cause affidavit** which is a part of the court record filed with the clerk of the court is hereby incorporated by reference and agreed to by the defendant as a factual basis for this plea.

---

[2] Unless noted otherwise, citations to the state-court record are to the electronically-filed exhibits attached to the State's motion to dismiss, Doc. 11.

Doc. 11, Ex. B; *see also* Doc. 2, Ex. B (Arrest/Offense Report). Goshay certified, by signing the plea form, that: "I have reviewed the facts of my case(s) with my attorney and I agree and stipulate there are sufficient facts available to the State to justify my plea of guilty or nolo contendere to the charge(s)." Doc. 11, Ex. B at ¶ 8.

Goshay entered his *nolo contendere* pleas in open court on April 13, 2012. Ex. C. The trial court found that Goshay's pleas were knowing and voluntary, and that they were supported by a sufficient factual basis as set forth in the arrest/offense report. Ex. C. The trial court accepted Goshay's pleas, adjudicated him guilty of all charges, and sentenced him consistent with the plea agreement, to 20 years of imprisonment. Exs. C, D.[3] Judgment was entered on April 13, 2012. Ex. D. Goshay did not timely appeal the judgment. Doc. 1 at 2; Doc. 11, Ex. E.

Over two years later, on April 30, 2014, Goshay filed a *pro se* petition in the Florida First District Court of Appeal ("First DCA") seeking a belated direct appeal. Ex. F. On December 24, 2014, the First DCA denied the petition on the merits. *Goshay v. State*, No. 1D14-2026, 156 So. 3d 1078 (Fla. 1st DCA 2014) (copy at Ex. L).

---

[3] The Florida court sentenced Goshay to 20 years of imprisonment as to Count 1; 5 years of imprisonment as to Count 2; 5 years of imprisonment as to Count 3; 5 years of imprisonment as to Count 4; and 1 year of imprisonment in the county jail as to Count 5, all terms of imprisonment to be served concurrently.

Beginning on February 9, 2015, Goshay filed several *pro se* motions for postconviction relief in the state circuit court. Exs. O, Q, S, X, Z, BB, DD, FF, LL. The state circuit court denied all of them on state procedural grounds. Exs. P, R, S, Y, AA, CC, EE, GG, MM.

On July 21, 2017, Goshay filed a *pro se* petition for writ of habeas corpus in the First DCA. Ex. NN. The First DCA dismissed the petition on August 16, 2017, citing *Baker v. State*, 878 So. 2d 1236 (Fla. 2004).[4] *See Goshay v. State*, No. 1D17-2993, 224 So. 3d 884 (Fla. 1st DCA 2017) (copy at Ex. OO).

On October 26, 2017, Goshay filed another *pro se* petition for a belated direct appeal. Ex. PP. On February 28, 2018, the First DCA dismissed the petition as successive. *Goshay v. State*, No. 1D17-4546, 237 So. 3d 484 (Fla. 1st DCA 2018) (copy at Ex. SS). On May 22, 2018, the First DCA determined that Goshay was abusing the legal process, and barred him from future *pro se* filings in the First DCA concerning his underlying criminal case. Ex. VV.

Goshay filed his *pro se* federal habeas petition on February 2, 2022. Doc. 1 at 1. Goshay's petition raises three claims: (1) his pleas were involuntary because counsel misadvised Goshay that he would be sentenced to only 15 years of

---

[4] *Baker* held that: "The remedy of habeas corpus is not available in Florida to obtain the kind of collateral postconviction relief available by motion in the sentencing court pursuant to rule 3.850." *Baker*, 878 So. 2d at 1245.

imprisonment; (2) his pleas were involuntary because he entered them when he was on psychotropic medication; (3) his pleas were involuntary because he is innocent and his trial counsel failed to advise him of a viable defense. *Id*. at 9-13.

The State asserts that Goshay's petition is time-barred, because it was filed outside the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1). Doc. 11. Goshay concedes that his petition was filed outside the limitations period. Doc. 1 at 19; Doc. 2 at 11, ¶ 33; Doc. 13 at 2, ¶ 2. Goshay asserts that he satisfies the "actual innocence" exception to the limitations bar. Doc. 2 at 11-12; Doc. 13.

## II. DISCUSSION

### A.    The Federal Habeas Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Goshay's § 2254 petition, because the petition was filed after the AEDPA's effective date—April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA establishes a 1-year period of limitation for a state prisoner to file a federal habeas petition. *See* 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United

States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1). The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2).

**B.**   <u>**Goshay's Habeas Petition Is Untimely**</u>

Goshay does not assert that an unconstitutional State-created impediment to filing his federal habeas petition existed, that he bases his claims on a right newly recognized by the United States Supreme Court, or that the facts supporting his claims could not have been discovered through the exercise of due diligence before his judgment became final. Accordingly, the statute of limitations is measured from the remaining trigger, which is the date Goshay's judgment became final. *See* 28 U.S.C. § 2244(d)(1).

Goshay did not timely seek direct review of his April 13, 2012, judgment. Accordingly, his judgment became final for purposes of § 2244(d)(1)(A), at the

expiration of the time for seeking such review. *See* 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding that for petitioners who do not pursue direct review all the way to the United States Supreme Court, "the judgment becomes final at the 'expiration of the time for seeking such review'— when the time for pursuing direct review in this Court, or in state court, expires.").

Goshay's time to seek direct review of his judgment expired on May 14, 2012, which was the deadline for him to file a notice of appeal in the First DCA. *See* Fla. R. App. P. 9.140(b)(2)(A)(ii), (b)(3).[5] The federal habeas limitations period began to run one day later, on May 15, 2012, and expired one year later, on May 15, 2013, absent tolling. *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (holding that Federal Rule of Civil Procedure 6(a)(1) applies to calculation of the AEDPA's one-year limitations period; thus, the limitations period begins to run from the day after the day of the event that triggers the period); *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (holding that the limitations period should be calculated according to the "anniversary method," whereby the limitations period expires on the one-year anniversary of the date it began to run).

---

[5] Because May 13, 2012, was a Sunday, Goshay had until the following Monday to file a notice of appeal. *See* Fla. R. App. P. 9.420(e); Fla. R. Gen. Prac. & Jud. Admin. 2.514.

Goshay did not file a tolling application during that critical one-year period. *See* 28 U.S.C. § 2244(d)(2). Goshay's federal habeas petition, filed on February 2, 2022, is untimely by almost nine years.

As noted above, Goshay concedes that his petition is untimely. Goshay seeks to avail himself of the "actual innocence" gateway to overcome the limitations bar.

## C.    <u>Actual Innocence Standard</u>

Actual innocence, if proved, serves as a gateway through which a federal habeas petitioner may pass to overcome a statute-of-limitations bar to consideration of the merits of his constitutional claims. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "[T]enable actual-innocence gateway claims are rare." *Id*. at 386. The petitioner must make a threshold showing that satisfies the *Schlup* standard—the standard of proof governing procedural claims of actual innocence. *McQuiggin*, 569 U.S. at 386 (citing *Schlup v. Delo*, 513 U.S. 298 (1995)). The *Schlup* standard requires the habeas petitioner to demonstrate that constitutional error "probably resulted" in the conviction of one who is actually innocent. *Schlup*, 513 U.S. at 324, 326-27.

A mere allegation of innocence is not enough. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324.

In addition, the "new" evidence "must do more than counterbalance the evidence that sustained the petitioner's conviction." *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1016–17 (11th Cir. 2012). "The new evidence must be so significant and reliable that, considered with the trial record as a whole, it 'undermine[s] confidence in the result of the trial' such that 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Rozzelle*, 672 F.3d at 1017 (quoting *House v. Bell*, 547 U.S. 518, 537 (2006)); *see also Schlup*, 513 U.S. at 329 ("[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."); *House*, 547 U.S. at 538 (emphasizing that the *Schlup* standard is "demanding" and seldom met). "The actual innocence exception is 'exceedingly narrow in scope,' and the petitioner must demonstrate that he is factually innocent rather than legally innocent." *House*, 547 U.S. at 538 (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

**D.** **Goshay Does Not Satisfy the *Schlup* Standard**

Goshay asserts that the facts sets forth in Ground Three of his federal habeas

petition satisfy *Schlup*'s actual innocence standard. Doc. 2 at 11. In Ground Three,

Goshay challenges his Aggravated Child Abuse conviction on the following basis:

> Petitioner is innocent of this crime. Counsel failed to advise him
> of a viable defense to prove his innocence: calling an expert in
> biomechanical engineering to demonstrate impossibility of the
> accusation and calling Petitioner himself to testify to what actually
> occurred. Had counsel done so, he would not have pled no contest but
> would have gone to trial.

Doc. 1 at 13.

Goshay's supporting memorandum attaches a copy of the offense report that

provided the factual basis for his *nolo contendere* pleas. Doc. 2, Ex. B. With regard

to the Aggravated Child Abuse charge, the offense report contains, in relevant part,

the following facts described by Officer Kelly:

> On 10/23/10 I responded to a physical domestic violence in-
> progress complaint at 4451 Jernigan Rd. Lot #22. Sgt. Leonard Thomas
> and I arrived at the same time. Sgt. Thomas made contact with the
> Suspect, Michael Goshay and one child, [M.G.]. I made contact with
> the victim, Hope Placer and a child named [redacted]. I observed Hope
> Placer to [be] very upset, crying, shaking and almost hysterical. I asked
> her what happened still crying Placer said: "where is my baby I need to
> know if he's ok, he is in the house". At that time Sgt. Thomas was
> walking to his car with the suspect, Goshay and he was holding his son
> [M.G.]. Placer said: "that is his son [M.G.] where is [R.P.]". I went into
> the trailer calling [R.P.]'s name. I heard him say I'm in here. I said I am
> Deputy Kelly I'm here to help you. He said I'm in here. I located him
> in the back of a dark closet, curled up in a ball, crying and shaking. He

Page 10 of 16

came to me, stood up and reached his arms out to me crying and shaking. I could see by his emotions and voice that he was scared to death. I immediately saw red marks all over his face and arms. His right eye was black and blue. I asked him if Michael Goshay beat him and [R.P.] said yes. I picked him up, he put his arms around me still crying, I said it's ok baby I am going to take care of you no one will hurt you. I called dispatch via radio and told them to send EMS in. I took [R.P.] outside and sat him down on a porch by his mother.

I asked Victim, Placer again what happened? Placer said her boyfriend, Michael Goshay who lives with her, beat her 4 year old baby, [R.P.] with a belt on his back, butt and legs. Placer said Goshay began punching [R.P.] with his fist and every time she tried to get to [R.P.] Goshay hit her with his hands, grabbed her by the neck chocking [sic] her so hard she temporally [sic] could not breath[e] and shoved her into the wall. Placer said this happened several times. Placer said he head butted her in the forehead one time before grabbing her throat. Placer said Goshay threw [R.P.] on the floor and began kicking [R.P.] with his foot and punching him with a closed fist. Goshay then grabbed [R.P.] by the throat chocking [sic] him and holding him only by the neck, threw [R.P.] across the room approximately 5 feet into the refrigerator. Placer said she took her daughter [redacted] and ran to the neighbors next door to call Sheriffs Office. Placer said that Goshay had kicked [R.P.] several times while he was on the floor, punched him with a closed fist in the mouth several times and kept on hitting [R.P.] in the head. She said [R.P.] kept falling to the floor and could not get away from Goshay hitting him and Goshay would continue hitting and kicking him.

I did observe red marks on Placer around her neck, face, chest, arms, shoulders and a knot on her forehead about the size of a quarter. I also observed on [R.P.] a black & blue right eye, red marks, bruises and scratches all over his head, face, chest, back, buttocks and arms.

Doc. 2, Ex. B. Officer Gunn added that she entered Goshay's travel trailer and

observed dents in the refrigerator consistent with a child's head. *Id.*

Goshay's "new evidence" of innocence consists of his own statement that "the startling fact is that in this travel trailer, there is no closet. . . . Thus, point number 1 is that this officer lied." Doc. 2 at 7, ¶ 20. Goshay's "Point number 2" is that:

> [A] bio mechanical expert could have examined the injuries and compared them with the accusation of Hope Placer and determine[d] that there was no close fisted punching, no stomping, no kicking or smashing of the head into a refrigerator. The scratches or bruising that was seen on [R.P.] were (#1) made by toddler fighting between Goshay's child and Hope's child, and (#2) inconsistent with what Hope described.

Doc. 2 at 7, ¶ 21. Goshay further asserts that if he, himself, had testified at trial, he would have said that Ms. Placer was lying and that R.P. sustained his injuries from "toddler fighting" with M.G. *Id*. at 7-9, ¶¶ 21-26.

Goshay's allegations could not be more speculative or unreliable. Goshay has not presented any actual evidence in connection with the "bio-mechanical expert." Goshay does not provide an affidavit from an expert, or even identify the name of his proposed expert. He simply imagines that an expert exists, and speculates that his testimony would be as Goshay states. Doc. 2 at 8, ¶ 23. Goshay's speculation falls far short of satisfying *Schlup*'s "new reliable evidence" standard. *See, e.g., Sibley v. Culliver*, 377 F.3d 1196, 1206 (11th Cir. 2004) (rejecting actual innocence claim where petitioner presented no evidence, by affidavit or otherwise, to show what the purported witness would, in fact, have testified).

Goshay's remaining allegations fare no better. Goshay offers only his bare, self-serving assertions that Officer Kelly and Ms. Placer lied. Goshay's after-the-fact statements are not remotely persuasive given his earlier plea of *nolo contendere* which admitted all the facts contained in the offense report. *See Vinson v. State*, 345 So. 2d 711, 715 (Fla. 1977) ("The plea of nolo contendere admits the facts for the purpose of the pending prosecution." (internal quotation marks and citation omitted)); *Chesebrough v. State*, 255 So. 2d 675, 677 (Fla. 1971) ("A plea of nolo contendere admits all the facts which are well pleaded."); *see also Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Considering all of the evidence that could have been presented at trial, including Goshay's present proffer of his own testimony, this court does not find that "it is more likely than not that no reasonable juror would have convicted him." *McQuiggin*, 569 U.S. at 399; *see also, e.g., Parks v. Cline*, 786 F. App'x 759, 763 (10th Cir. 2019) (petitioner's conclusory, self-serving and unsubstantiated allegation that his wife committed perjury when she testified against him at trial "fail[ed] to provide any evidence affirmatively demonstrating his innocence," and was not

enough to satisfy the *Schlup* standard); *Brogan v. Horton*, No. 19-1620, 2019 WL 6521656, at *3 (6th Cir. Sept. 11, 2019) (Mem.) (unpublished) ("Although Brogan claims that he is innocent, the victim has never recanted her testimony and Brogan has not offered any new evidence to support his assertion.").

Goshay has not supported his claim of "actual innocence" with any new reliable evidence as required by *McQuiggin* and *Schlup*. Because Goshay has failed to overcome the statute-of-limitations bar, his untimely petition should be dismissed.

## III. A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason

could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully

**RECOMMENDS** that:

1.    Respondent's motion to dismiss, Doc. 11, be **GRANTED**.

2.    The petition for writ of habeas corpus, Doc. 1, challenging the judgment

      of conviction and sentence in *State of Florida v. Michael Allen Goshay*,

      Santa Rosa County Circuit Court Case No. 2010-CF-1336, be

      **DISMISSED with prejudice** as time-barred.

3.    The District Court **DENY** a certificate of appealability.

4.    The clerk of court close this case file.

At Pensacola, Florida, this 17th day of August, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**

Page 16 of 16